Gary VANOVER and Carol
Vanover, Appellants,

v.

BANK OF ALEXANDRIA, now Northern
Kentucky Bank & Trust Co., Mark Web-
ster and Rose Ann Webster (now Stef-
fen), Appellees.

Court of Appeals of Kentucky.

Feb. 4, 1983.

Carl J. Melcher, Northern Kentucky Le-
gal Aid Soc., Inc., Covington, for appellants.

Marcus S. Cary, Newport, Michael L.
Baker and Portia F. Schaefer, Covington,
for appellees.

Before HAYES, C.J., and HOWARD and
LESTER, JJ.

HOWARD, Judge.

This is an appeal from a judgment hold-
ing that the appellee Bank had properly
perfected its lien against a mobile home
prior to the appellants' purchase of it.

On February 17, 1978, appellee Mark
Webster ("Webster") obtained a 1977 certif-
icate of title and registration for a mobile
home owned by he and Rose Ann Webster,
who was, at that time, his wife. On August
5, 1978, the Websters borrowed the original
amount of $4600.00 from Northern Ken-
tucky Bank & Trust Co., formerly Bank of
Alexandria ("Bank"), securing the loan with
their mobile home. On August 10, 1978, the
Bank filed its security agreement and fi-
nancing statement with the Campbell Coun-
ty Court Clerk.

On June 19, 1979, Mark Webster sold the
mobile home to the appellants, Gary and
Carol Vanover, for $4,000.00. Webster
gave the Vanovers the 1977 certificate of
title as evidence that he owned the mobile
home clear of encumbrances. The Van-
overs relied on this misrepresentation and
were unaware of the Bank's interest in the
mobile home until February, 1980, when the
Bank informed them of the existence of the
security agreement.

The Websters subsequently became delin-
quent with their payments on the loan to
the Bank and on August 7, 1980, the Bank
filed an action to foreclose on its security
interest in the mobile home. The Bank
sought payment on the note from the Web-
sters or repossession of the mobile home
from the Vanovers.

On November 21, 1980, the trial court granted judgment by default against Mark Webster in favor of the Bank. The Websters had divorced and Rose Ann Webster (Steffen) filed a response. The Vanovers counterclaimed against Mark Webster for fraud. The case was referred to the Master Commissioner on June 24, 1981, for an evidentiary hearing and a report was made to the court on August 7, 1981. The trial court found that the Bank had a valid lien against the mobile home as security property and ordered that it be sold, pursuant to the original agreement between the Bank and the Websters. We affirm.

The Vanovers brought this appeal to attempt to retain their home for which they paid the Websters in full and where they have lived for more than three years. Their argument is that since the Bank failed to perfect its security agreement under the provisions of K.R.S. 186.045(2)(a), its lien is unenforceable against a bona fide purchaser without knowledge. K.R.S. 186.-045(2)(a) states in pertinent part:

> Whenever a financing statement required by KRS chapter 355 relating to any vehicle registered or required to be registered in Kentucky for use on the highway is presented to a county clerk for filing, such clerk shall also immediately note information required by the department relative thereto on the owner's copy of the registration or transfer receipt issued for the current registration period as noted in subsection (2) of KRS 186.170, which the secured party must obtain and present to the county clerk, along with the financing statement . . . .

The Vanovers contend that since the Bank did not have the relevant information noted on the 1977 registration which they received from the Websters, then the Bank did not properly perfect its interest and cannot now assert a valid claim against the mobile home. There are several reasons why this argument fails.

■ First, the mobile home was not required to be registered for "use on the highway" under the provisions of K.R.S. Chapter 186. K.R.S. 186.045 only applies to "vehicles" as defined in K.R.S. 186.010 which does not include mobile homes. Further, K.R.S. 186.650, which contains the definitions pertaining to the registration of trailers, specifically excludes a house-trailer being used "in one location as a permanent dwelling." The mobile home in this case clearly falls within that exclusion as it had a permanent location, was connected to water and sewage, had a driveway and porch and was obviously intended as a permanent home and not a vehicle or temporary dwelling. Therefore, the mobile home purchased by the Vanovers from the Websters was not, at any time, required to be registered under the motor vehicles provisions.

■ However, the Vanovers emphasize that even if the registration was not required, it did in fact occur when Mark Webster registered the mobile home in 1978. Therefore, they contend that registering the mobile home brought it within the constraints of K.R.S. 186.045(2) requiring any liens to be noted on such registration. Even if this voluntary registration is construed as activating the filing statute, the registration here was invalid as it was expired by the time the Vanovers purchased the mobile home. Once an owner has registered under the applicable statute, "he shall register his trailer, semitrailer, or house-trailer on or before April 1 of each year." K.R.S. 186.665(4). Webster registered his mobile home in February, 1978, but failed to register the following year. When the Vanovers bought the mobile home in June, 1979, the certificate they received as evidence of clear title was nothing more than an expired registration.

It is unfortunate that the Vanovers relied on the worthless registration, but the fact remains that the Bank complied with the filing provisions of K.R.S. Chapter 355 and as such had perfected their security interest by filing in the County Clerk's office.

The judgment of the trial court is affirmed.

All concur.